**CV 12      5255**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

LUCIOUS WELCOME,

GLASSER, J.

PLAINTIFF,

COMPLAINT GO, M.J.

-AGAINST-

ECF CASE

NEW YORK CITY, ASSISTANT DISTRICT
ATTORNEY CHARLES GUERRERO, POLICE
SERGEANT TROY LUIS, POLICE DETECTIVE
PARSEKEAN AND POLICE OFFICER BENJAMIN
MALDONADO, IN THEIR INDIVIDUAL AND
PROFESSIONAL CAPACITIES.

DEFENDANTS.

------------------------------------------------------------------------ x

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK
2012 OCT 19 PM 12: 12
FILED
CLERK

## PRELIMINARY STATEMENT

1. This is a civil action in which plaintiff, Mr. Lucious Welcome ("Mr. Welcome"),
   seeks relief for the violation of his rights secured by 42 USC 1983, the Fourth and
   Fourteenth Amendments to the United States Constitution.

2. The claims arise from an incident on or about November 15, 2010, in which officers
   of the New York City Police Department ("NYPD") and attorneys at the Kings
   County District Attorney's Office ("KCDAO"), acting under color of state law,
   intentionally and willfully subjected Mr. Welcome to *inter alia* excessive force and
   malicious abuse of process.

3. Plaintiff seeks monetary damages (special, compensatory and punitive) against
   defendants and an award of costs and attorneys' fees, and such other and further relief
   as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 USC 1331, 42 USC 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5. Venue is laid within the United States District Court for the Eastern District of New York in that the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

6. Plaintiff, Mr. Welcome, at all times here relevant resided at 68 Rutland Street, Brooklyn, New York.

7. New York City is a municipal corporation organized under the laws of the State of New York.

8. Police Sergeant Troy Luis ("Sergeant Luis"), Police Detective Parsekean ("Detective Parsekian") and Police Officer Benjamin Maldonado ("PO Maldonado"), at all times here relevant were members of the NYPD, and are sued in their individual and professional capacities.

9. Assistant District Attorney Charles Guerrero ("ADA Guerrero"), at all times here relevant was an attorney at KCDAO, and is sued in his individual and professional capacity.

10. At all times mentioned, defendants were acting under color of state law, under color of the statues, ordinances, regulations, policies, and customs and usages of the City of New York.

## FACTUAL ALLEGATIONS

### Mr. Welcome Moves To Brooklyn As A Teenager To Live With His Uncle

11. Mr. Welcome is 32 years old and was born in Guyana in 1980.

12. Mr. Welcome is one of eight children and was raised by his mother.

13. Mr. Welcome's father tragically died before he was born.

14. Mr. Welcome came to the United States of America when he was fourteen years old

to live with his Uncle in Flatbush, Brooklyn, New York.

15. Mr. Welcome attended Thomas Jefferson High School in Brooklyn.

### Mr. Welcome Opens A Barber Shop In His Local Community

16. Mr. Welcome left Thomas Jefferson High School to become a barber.

17. In or about 1994, Mr. Welcome served an apprenticeship at Hair Nurse Barber Shop,

located in East New York, Brooklyn.

18. In or aound1997 until in or around 1999, Mr. Welcome worked at Jay's Barber Shop

in East New York, Brooklyn.

19. In or around 1999, Mr. Welcome started his own Barber shop, called 'Big Junior's

Barber Shop', located in East New York, Brooklyn.

20. Mr. Welcome continued to own and operate Big Junior's Barber Shop up until the

time of the incident described herein.

21. Mr. Welcome has always sent part of his earnings back to Guyana every month to

help support his mother and siblings.

22. Mr. Welcome is a member of the Christ of Jesus Church, located in East New York,

Brooklyn.

23. Mr. Welcome began attending the Church more regularly after assuming ownership of Big Junior's Barber Shop in order to foster client relationships.

24. Mr. Welcome is an active participant in community activities.

## On November 15, 2010, Mr. Welcome Spends Time With His Girlfriend And With An Old Friend From Guyana, Then Meets Up With A Client

25. On or about November 15, 2010, Mr. Welcome was with his girlfriend, Ms. Kyia McMillan ("Kyia"), at her apartment, located in East New York, Brooklyn.

26. Kyia has been Mr. Welcome's girlfriend for three years, although they have known each other for approximately eight years.

27. Kyia is currently pregnant with Mr. Welcome's child.

28. While at Kyia's apartment, Mr. Welcome received a phone call from a close friend of his, Ms. Amanda Richardson ("Amanda"), who also grew up in Guyana.

29. Amanda lived in New York but had just returned from visiting Guyana, so Mr. Welcome was keen to catch up with news from his homeland.

30. At approximately 10.00 pm, Mr. Welcome went to Amanda's apartment located on Belmont Avenue, East New York, Brooklyn.

31. Mr. Welcome and Amanda spent a number of hours talking and drinking.

32. At approximately 2:00 am, Mr. Welcome left Amanda's apartment and went to get the subway home.

33. As Mr. Welcome was on the over-ground 3-train he received a call from a client of his known as "Rambo."

34. Mr. Welcome had been Rambo's barber for a number of years.

35. Rambo asked Mr. Welcome if he wanted to meet up to 'hang-out'.

36. Mr. Welcome often socializes with his clients in order to promote business, so he agreed to meet Rambo.

37. Mr. Welcome got off the 3-train and headed to meet up with Rambo at the corner of Blake Avenue and Tapscott Street.

## Mr. Welcome Urinates Behind Some Metal Trash Cans When Sergeant Luis Approaches Him and Points A Gun At Him

38. By the time Mr. Welcome met up with Rambo at the corner of Blake Avenue and Tapscott Street, Mr. Welcome needed to urinate.

39. Mr. Welcome did not want to urinate on the street, so he went behind some metal trashcans at the entrance to a side-alley outside of 150 Tapscott Street.

40. As Mr. Welcome was in the process of urinating, Sergeant Luis came out of the building at 150 Tapscott Street and started shouting at Mr. Welcome.

41. Sergeant Luis was carrying his police firearm and his NYPD police shield was clipped to his wristband.

42. Upon information and belief, Sergeant Luis shouted, "Police, don't move!"

43. Sergeant Luis pointed his gun at Rambo, who turned and ran away down Tapscott Avenue.

## Mr. Welcome Flees In Terror And Sergeant Luis Shoots Him In His Back

44. Mr. Welcome was terrified and ran down the alleyway next to 150 Tapscott Avenue.

45. Mr. Welcome was unarmed and had his back to Sergeant Luis as he ran down the alleyway.

46. Sergeant Luis proceeded to fire three shots at Mr. Welcome as Mr. Welcome ran down the alleyway.

47. Sergeant Luis waited ten seconds before firing another shot at Mr. Welcome's back.

48. One of Sergeant Luis's shot hit Mr. Welcome in the back.

49. The bullet entered Mr. Welcome's back and lodged in the base of his neck, where it became wedged in.

50. Mr. Welcome was in excruciating pain.

51. Mr. Welcome desperately tried to find cover and crawled into a doorway in the alley.

52. After several minutes, PO Maldonado and Police Officer Sukheinder ("PO Sukheinder") arrived on the scene and spoke to Sergeant Luis.

**Sergeant Luis Falsely Accuses Mr. Welcome Of Trying To Steal His Motorbike**

53. Upon information and belief, Sergeant Luis falsely alleged that Mr. Welcome had attempted to steal his motorbike.

54. Police Officer Stephen Algozzini ("PO Algozzini) then also arrived on the scene.

55. PO Sukheinder took Sergeant Lewis's weapon from him, but shortly thereafter PO Sukheinder returned the weapon to Sergeant Luis, on the instruction of PO Algozzini.

56. PO Maldonado and PO Algozzini then entered the alleyway and, following the trail of blood on the floor, found Mr. Welcome in the doorway.

57. Without legal justification, PO Maldonado arrested Mr. Welcome.

58. PO Maldonado handcuffed Mr. Welcome behind his back and dragged him from the alleyway into the street.

59. PO Maldonado held up Mr. Welcome's pants because Mr. Welcome had unfastened them to urinate and not been able to re-fasten them.

60. Mr. Welcome was taken to Brookdale Hospital.

61. The doctors were not able to safely remove the bullet from the base of Mr.
Welcome's neck.

62. Mr. Welcome was informed that the bullet could never be removed without
jeopardizing Mr. Welcome's safety.

### Detective Parsekean Falsifies Mr. Welcome's Statement

63. At the hospital Mr. Welcome was handcuffed to the bed and questioned by police
officers, including Detective Parsekean.

64. Detective Parsekean took an oral statement from Mr. Welcome at Brookdale
Hospital.

65. Detective Parsekean later wrote up a falsified statement that did not accurately reflect
what Mr. Welcome had told him.

66. Detective Parsekean passed this statement on to prosecutors.

67. Mr. Welcome never signed this falsified statement.

68. Mr. Welcome was taken from the hospital to the 73rd Precinct the next evening.

69. Mr. Welcome was dressed only in a hospital gown, robe and hospital slippers.

70. At the 73rd Precinct Mr. Welcome gave a statement to Detective Parsekean.

71. Mr. Welcome was presented with another falsified statement that did not accurately
reflect what Mr. Welcome had told Detective Parsekean at the precinct.

72. Mr. Welcome is illiterate and was not able to understand the written statement.

73. Mr. Welcome signed the statement because he was told that he would not be allowed
to leave if he did not sign it.

74. At approximately 11:00 pm on November 15, 2010, Mr. Welcome was taken to
Central Booking and charged with Attempted Grand Larceny, which is a felony.

75. Mr. Welcome was released from police custody and had to walk home in the rain without proper clothes or shoes.

76. Mr. Welcome received medication and painkillers but could not afford to see a specialist to treat his injuries.

**Assistant District Attorney Charles Guerrero Presents Charges Against Mr. Welcome To The Grand Jury In Order To Protect Sergeant Luis From Prosecution**

77. Following the incident, Sergeant Luis met with ADA Guerrero and other district attorneys at the KCDAO.

78. Sergeant Luis falsely alleged that Mr. Welcome had attempted to steal his motorcycle.

79. In a deliberate attempt to protect Sergeant Luis from the legal repercussions of shooting Mr. Welcome in the back, ADA Guerrero and Sergeant Luis conspired to present charges against Mr. Welcome to a Grand Jury.

80. No charges were presented against Sergeant Luis to a Grand Jury.

81. Mr. Welcome was indicted on charges of Attempted Grand Larceny and Trespass.

82. Sergeant Luis gave evidence at the Grand Jury hearing.

83. As a result of giving evidence at the Grand Jury, Sergeant Luis was immune from prosecution for shooting Mr. Welcome in the back.

84. As a result of the indictment, Mr. Welcome was forced to make numerous court appearances during the one year and eight months following the incident.

85. On July 18, 2012, Mr. Welcome was acquitted of all charges at trial.

86. Mr. Welcome suffered severe pain and discomfort as a result of being shot and continues to suffer from pain and discomfort as a result of the bullet lodged in his neck.

87. As a result of Mr. Welcome's injuries he was unable to work full-time for 9 months and he is still unable to fully function as a barber as a result of his injuries.

88. Mr. Welcome continues to feel traumatized by the events of November 15, 2010, and is wary and fearful when he sees police officers. Mr. Welcome takes efforts to avoid police officers when in public.

89. Mr. Welcome has suffered a great deal following the incident and continues to feel fear, embarrassment, humiliation, emotional distress, frustration, anxiety and physical pain.

90. Mr. Welcome has suffered physically, mentally and financially as a result of this incident.

## FIRST CAUSE OF ACTION

### (42 USC 1983 – False Arrest)

91. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

92. Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC 1983.

93. Defendants have deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that plaintiff was falsely arrested by defendants.

94. Defendants confined plaintiff.

95. Plaintiff was aware of, and did not consent to, his confinement.

96. The confinement was not privileged.

97. Plaintiff has been damaged a result of defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

## SECOND CAUSE OF ACTION

### (42 USC 1983 – Excessive Force)

98. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

99. Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC 1983.

100.     Defendants have deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that defendants used excessive and unreasonable force in effecting the arrest of plaintiff.

101.     Plaintiff has been damaged as a result of defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

## THIRD CAUSE OF ACTION

### (42 USC 1983 – Malicious Prosecution)

102.     Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

103.     Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC 1983.

104.    Defendants have deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that plaintiff was maliciously prosecuted by defendants.

105.    The malicious prosecution was initiated by defendants without legal justification and without probable cause, in that defendants caused the commencement and continuation of criminal proceedings against plaintiff, the proceedings terminated in favor of plaintiff, and in that the action was commenced and continued intentionally and with malice and deliberate indifference to plaintiff's rights.

106.    Plaintiff has been damaged a result of defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

### FOURTH CAUSE OF ACTION

(42 USC 1983 – Malicious Abuse of Process)

107.    Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

108.    Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC 1983.

109.    Defendants have deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that plaintiff suffered from defendants' malicious abuse of process.

110.    Defendants employed regularly issued legal process to compel performance or forbearance of an act, with intent to do harm to plaintiff and without excuse or justification, and in order to obtain a collateral objective that was outside the legitimate ends of the process.

111.   Plaintiff has been damaged a result of defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

## FIFTH CAUSE OF ACTION

(42 USC 1983 -Section 1983 Conspiracy)

112.   Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

113.   Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC 1983.

114.   Defendants entered into an agreement or understanding, express or implied, to violate plaintiff's constitutional rights and to accomplish an unlawful purpose, in that Defendants conspired to maliciously prosecute plaintiff and deny plaintiff his right to a fair trial.

115.   Plaintiff has been damaged a result of defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

## SIXTH CAUSE OF ACTION

(42 USC 1983 –Denial of Right to a Fair Trial)

116.   Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

117.   Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC 1983.

118.   Defendants have deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that plaintiff was denied the right to a fair trial.

119.    Defendants created false information likely to influence a jury's decision and then forwarded that information to prosecutors, resulting in Plaintiff suffering a deprivation of liberty and a violation of his rights.

120.    Plaintiff has been damaged a result of defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

## SEVENTH CAUSE OF ACTION

### (Constitutional Tort)

121.    Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

122.    Defendants, acting under color of law, violated plaintiff's rights pursuant to Sections 6 and 12 respectively of the New York State Constitution.

123.    A damages remedy is necessary here to enforce the purposes of Sections 6 and 12 of the New York State Constitution, and ensure the full realization of plaintiff's rights under those sections.

124.    Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under the New York State Constitution in an amount believed to equal or exceed the jurisdictional limit of this Court.

## JURY DEMAND

125.    Plaintiff demands a trial by jury.

WHEREFORE, plaintiff respectfully requests that the court enter a Judgment against defendants together with costs and disbursements as follows:

In favor of plaintiff in an amount to be determined by a jury, but at least equal or exceeding the jurisdictional limit of this Court for each of plaintiff's causes of action;

Awarding plaintiff punitive damages in an amount to be determined by a jury;

Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action;

And such other and further relief as the Court deems just and proper.

Dated:     New York, New York
October 18, 2012

By:      _____
Duncan Peterson (DP 7367)

PetersonDelleCave LLP
Attorney for Plaintiff
233 Broadway, Suite 1800
New York, NY 10279
(212) 240-9075